148 N.J. Super. 1 (1977)
371 A.2d 799
V. PETRILLO & SON, INC., PLAINTIFF-RESPONDENT,
v.
AMERICAN CONSTRUCTION CO., DEFENDANT, AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1977.
Decided March 18, 1977.
*2 Before Judges BISCHOFF, MORGAN and KING.
Mr. Michael S. Meisel argued the cause for the appellant (Messrs. Cole, Berman & Belsky, attorneys).
Mr. Louis Chodash argued the cause for the respondent.
The opinion of the court was delivered by KING, J.S.C., Temporarily Assigned.
Plaintiff subcontractor sued defendant general contractor for amounts due *3 for construction work it performed on a moderate-income housing project sponsored by Union Plaza Associates and partially financed by the New Jersey Housing Finance Agency (Agency). Prior to trial defendant American Construction Company (American) was declared bankrupt. Defendant St. Paul Fire and Marine Insurance Company (St. Paul), which issued a labor and materials payment bond, defended on the basis that plaintiff had not complied with the notice requirements of the bond and had not brought suit in a timely fashion.
The bond required that plaintiff give written notice stating the amount claimed to any two of the following: the principal (American), any one of the obligees (one of which was the Agency), or the surety (St. Paul). Such notice must be served by registered mail or by legal process within 90 days after the claimant has last supplied labor or material to the project. The bond also required plaintiff to institute suit against St. Paul within one year after American "ceases work" under the contract.
The bond incorporated the prime construction contract by reference. The contract defined work as the totality of obligations imposed upon the contractor by all contract documents. The contract directed Union Plaza Associates as owner to issue a certificate of final acceptance approved by the Agency after correction of all construction defects. A certificate of final acceptance has never been issued.
The proofs at trial showed that plaintiff last performed, work on the project on August 17, 1972. Within a month thereafter it sent both American and the Agency a statement of amount claimed for work performed. Such notice was not sent by registered mail but was admittedly received. Defendant American last performed work on the project on October 4, 1972. The last work done by any subcontractor was in December 1972. The three apartment buildings comprising the project were occupied by January 1, 1973. Plaintiff instituted suit in May 1974, 18 months after the last subcontractor performed construction work on the project.
*4 Following a nonjury trial the trial judge entered judgment for plaintiff. The judge held that because a certificate of final acceptance had never been issued, American had never "ceased" work within the meaning of the contract. He also ruled that the project was a public work and commencement of suit was therefore not out of time. This conclusion was based on N.J.S.A. 2A:44-146, which permits a subcontractor to institute suit on a bond within one year from the date of acceptance of a public work. Finally, the trial judge found St. Paul estopped from asserting that American had ceased work because in its counterclaim St. Paul alleged that plaintiff had never completed performance of its work on the project. The judge reasoned that St. Paul could not contend American ceased work on the job while at the same time assert that plaintiff had not yet completed work.
St. Paul's principal contention on appeal is that plaintiff is barred from recovery because it did not commence suit within one year of the date on which American ceased work. The bond provided as follows:
4. No suit or action shall be commenced hereunder by a complainant:

* * * * * * * *
(b) After the expiration of one (1) year following the date on which Principle ceases work under the contract. Work under the contract includes work on approved items of delayed completion.
In addition St. Paul urges plaintiff's noncompliance with the bond notice provisions warrants dismissal of the action on the bond, asserts misapplication of the doctrine of estoppel, and denies the applicability of the time limitation contained in N.J.S.A. 2A:44-146.
We agree with St. Paul's contention of untimely commencement of the suit. The trial judge construed the term "ceases work" to mean "completes work." We recognize the principles concerning the construction of surety bonds and the policy of the law to favor materialmen and laborers *5 in cases of doubtful or uncertain construction of the language contained in surety bonds. See Amelco Window Corp. v. Fed'l Ins. Co., 127 N.J. Super. 342, 349-350 (App. Div. 1974); 17 Am. Jur.2d Contractors Bonds, § 3 (1964). The word "cease" is defined by Webster's New International Dictionary 2 Ed. unabr. as meaning to discontinue, refrain, end, stop, quit, leave off. The record clearly demonstrates that American discontinued or left off performing its obligations under the contract in December 1972, when the last subcontractor performed construction work on the project. The language of the bond should be given a common sense meaning and not tortured to reach a particular result. The non-issuance of a certificate of final acceptance by the owner is at best evidence that the general contractor has not completed its work under the contract. The non-issuance of such certificate does not control the common understanding of when the general contractor "ceased work" on the job. The trial judge's interpretation of the term "ceased work" subjects the surety to legal exposure over a long period of time, perhaps years after the project has in fact been completed and occupied for its intended use. Even at this late date the surety's liability to suit would be extant because the certificate of final approval has not been issued, surely not a result contemplated by the parties to the bond and contract. We hold the phrase "completes work" cannot be used interchangeably with the phrase "ceases work" in this bond.
We agree with St. Paul that the time limitation contained in the subject bond applies. The prime contract required American to furnish a bond prepared on forms satisfactory to the Agency, and the statute requires no more. The limitation of action provision in this bond, approved by the Agency, is quite different from that set forth in N.J.S.A. 2A:44-146 permitting suit within one year after acceptance of a public work, and there is no indication that the Agency was in error in approving the bond form utilized here.
*6 N.J.S.A. 55:14J-9(a)(4) directs the agency to require the qualified housing sponsor or its contractor to post labor and materials surety bonds. This section does not refer to or incorporate by reference the statutory bond form and requirements set forth in N.J.S.A. 2A:44-143 et seq. To adopt the trial judge's ruling that the time limitation set forth in the public works statute controls over the bond language would necessitate reaching the conclusion that the Agency had approved a bond form contrary to law. We find no persuasive reason in the statutory language or otherwise to adopt such a view. N.J.S.A. 2A:44-143 et seq. applies to "public buildings, or other public works or improvements" undertaken by "the state or any county municipality or school district." The project here undertaken by a private owner Union Plaza Associates and on which this bond was issued was financed under the "New Jersey Housing Finance Agency Law of 1967." N.J.S.A. 55:14J-1 et seq. By its declaration of policy this statute created a public agency "to encourage the investment of private capital" through the use of "public financing, public loans and otherwise." N.J.S.A. 55:14J-2. According to the title of the act, the statutory agency was created to assist and encourage "moderate income housing" by providing mortgage loans to qualified housing sponsors to be used for housing construction or rehabilitation. A "qualified housing sponsor" under the act may be any housing corporation qualified under the Limited-Dividend Non Profit Housing Corporations and Associations Law, N.J.S.A. 55:16-1 et seq., any urban renewal corporation or association qualified under the Urban Renewal Corporation and Association Law, N.J.S.A. 40:55C-40 et seq., any general corporation under Title 14 or 14A, or any nonprofit corporation or association under Title 15, or any qualified individual approved by the agency. The scope of the Housing Finance Agency law, both as to construction and ownership, is well beyond the usual scope of the customary concept of "public works." Projects to be financed under the act may be undertaken by various entities, *7 both private and quasi-public, not contemplated by the language of N.J.S.A. 2A:44-143, which relates only to the State and its traditional political subdivisions, i.e., counties, municipalities and subdivisions. The breadth of the language of the public bond statute describing public entities subject thereto is not as inclusive as the wording considered in Newark Laborer's v. Commercial Union Ins. Co., 126 N.J. Super. 1, 5 (App. Div. 1973). The language there under construction concerned work paid for in whole or in part out of funds of any instrumentality of the State for purposes of application of the Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq.
There is no basis for applying the doctrine of estoppel here. There is nothing inconsistent with St. Paul contending that American ceased work and at the same time asserting that plaintiff subcontractor had never completed work.
The judgment below is reversed and judgment is entered in favor of St. Paul.
Reversed.