**DRAVO CORPORATION, Appellant in 80–2255,**

v.

**ROBERT B. KERRIS, INC.; Martin Mechanical Corporation; Joseph L. Muscarelle, Inc.; and Ideal Toy Corporation; Hollis Urban Renewal Corp., and the American Insurance Company, and Philip W. Balsam, Individually.**

**Jos. L. Muscarelle, Inc., and the American Insurance Company, Appellants in 80–2256.**

**Nos. 80–2255, 80–2256.**

United States Court of Appeals, Third Circuit.

Argued March 24, 1981.

Decided July 21, 1981.

Rehearing Denied Oct. 19, 1981.

---

Richard L. Plotkin (argued), Pitney, Hardin & Kipp, Morristown, N. J., for Dravo Corp.

Gerard E. Fitzpatrick (argued), Goetz & Fitzpatrick, P. C., New York City, for Jos. L. Muscarelle, Inc. and The American Insurance Co.

H. Neil Broder (argued), Michael L. Ostrowsky, Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, PA, East Orange, N. J., for Martin Mechanical Corp.

Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Appellants, Joseph L. Muscarelle, Inc. ("Muscarelle") and American Insurance Company ("American"), appeal from a judgment of the district court of New Jersey awarding appellee, Dravo Corporation ("Dravo"), $227,461.93 plus interest. The appellants contend that Dravo is not entitled to the judgment because it did not comply with the terms of the bond upon which the court's award was based. The appellants argue, in the alternative, that even if the judgment is correct, they have a right of contribution against one of their co-defendants, Martin Mechanical Corporation ("Martin"), for the loss. They also urge this court, should we affirm the district court's judgment, to modify the amount of interest included in that award.

We need not rule on appellants' second and third contentions for we reverse, in

* Honorable John M. Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation.

part, on the first. Appellee failed to comply with the notice provisions of the payment bond and therefore was not entitled to payment under it. It was also not entitled to judgment under its alternative contract theories. Accordingly, we reverse that part of the district court's judgment which enters an award against Muscarelle and American. The district court's judgment against Martin is affirmed.

## FACTS

The facts of this case were set forth by the district court in an August 9, 1974 Letter Opinion and Order. As recited by the district court, "Defendant, Hollis Urban Renewal Corporation ("Hollis"), a wholly owned subsidiary of defendant, Ideal Toy Corporation ("Ideal"), entered into a contract with [a general contractor] Muscarelle for the erection of a manufacturing plant." American Insurance Co. was to serve as general surety on the project and it issued both a payment bond and performance bond to Hollis for the construction work.[1]

After the submission of bids, the general contractor, Muscarelle, entered into a subcontract with Robert B. Kerris, Inc. ("Kerris") for the installation of heating, ventilating, air conditioning and plumbing systems. The subcontract provided that Kerris use only Dravo ventilation units in the project. *See* Dec. 21, 1971 revised subcontract, p. 1, *reprinted in* Appendix at 75a–84a. In accordance with this provision, Kerris submitted a written order to Dravo for the purchase of the units. The order provided for the purchase of the ventilation units, including start-up services, at a net price of $224,000. Dravo conditioned its acceptance of the order, however, on an approval by its Credit Department. *See* Exhibit K, *reprinted in* Appendix at 101a.

Dravo's credit department sought a guaranty from the general contractor, Muscarelle, before it would approve Kerris' purchase order. Muscarelle declined to issue a guaranty. Instead, it referred Dravo to Martin which, because of its close relationship to Kerris, agreed to assure payment on the Kerris-Dravo contract.[2] On February 23, 1972, Philip W. Balsam, President of Martin, sent the following letter to James A. Davidson, the Credit Manager of Dravo:

Gentlemen:

In consideration of your acceptance of [the Kerris] order, we hereby guarantee payment by the purchaser in accordance with the terms thereof, and upon default by the purchaser, we will make payment.

We intend to be legally bound hereby.

Exhibit F, *reprinted in* Appendix at 171a. Martin, thereby, agreed to serve as the special guarantor on the Kerris-Dravo contract, while American would serve as the general surety for the construction project.

Dravo delivered the equipment to Kerris; Kerris, in turn, installed it in the building. As provided under its subcontract with Muscarelle, Kerris submitted monthly requisitions to Muscarelle for partial payments based upon the value of the work completed during that period. With each requisition, Kerris submitted an affidavit stating that it had fully paid all suppliers and that there were no claims outstanding.

In actuality, Kerris had not been paying its supplier. By September 26, 1972, Dravo had made its last delivery to Kerris, but had not been paid for any of the units. In January, 1973, Kerris filed its last requisition to Muscarelle. Once again, it certified that all of its suppliers had been paid; and once again, it failed to pay Dravo.

1. The district court denied Dravo's claim under the Performance Bond. Therefore, only the terms and conditions of the Payment Bond are at issue in this case.

2. The record discloses close ties between Kerris and the guarantor of its subcontract, Martin. The companies had interlocking directorships, joint shareholders, shared legal and management supervisors, and often submitted combined bids on construction projects. Philip

Balsam, a major stockholder of Martin, was Kerris' signatory on the Muscarelle-Kerris subcontract. In fact, Kerris' financial failure on the Muscarelle project is attributable, in part, to Martin's withdrawal of funds for the project.

Thus, while technically Martin and Kerris were two separate entities, it appears that in a very practical sense, the companies worked hand-in-hand.

On February 19, 1973, Dravo sent a letter to Ideal, with copies to Muscarelle, Martin and Kerris,[3] notifying them of Kerris' failure to make payments and demanding payment on the account. The letter stated in part:

Gentlemen:

The balance of our account with the R. B. Kerris, Inc. is $226,506.00 in connection with the above project. This amount has been outstanding since October 31, despite the fact that Mr. Kerris has been paid at least a portion of this money by the general contractor, Joseph L. Muscarelle, Inc. . . . We are willing to negotiate any and all backcharges, but we feel that the following conditions should apply:

1. We wish to attempt to settle all of the alleged backcharges at once.

2. We wish to receive now, payment in an amount consistent with the total contract less the alleged back charges. Following the settlement of these backcharges and the completion of the contract, we would expect to receive the agreed upon balance.

Therefore, please be advised that start-up service on the units furnished by Dravo to Ideal Toy Company will not be performed according to schedule. We have no intention of providing this service until an agreement has been made concerning payment and we have received that payment. . . . I am sorry that we must assume this attitude, but we feel that we are being treated unfairly in this situation and must take a stand in order to rectify it.

Exhibit D, *reprinted in* Appendix at 107a.

Despite its request, Dravo was never paid. In March, 1973, Kerris declared that it was financially unable to complete its subcontract. It defaulted on its contract and Muscarelle hired another subcontractor to complete Kerris' work. Dravo provided start-up services for the units from March, 1973 to May, 1973.

## PROCEDURAL HISTORY

On May 9, 1973, Dravo filed its original complaint, listing Kerris (subcontractor), Martin (guarantor), Muscarelle (general contractor), and Ideal (tenant) as defendants.[4] Dravo sought recovery under four alleged causes of action: (1) Recovery against *Kerris* under the purchase order it submitted to Dravo; (2) Recovery against *Martin* under the written guarantee it gave Dravo for payment of the units; (3) Recovery against *Muscarelle* as a third-party beneficiary to the Kerris-Muscarelle subcontract; and (4) Recovery against *Ideal* as a third-party beneficiary to the Ideal-Muscarelle contract. Kerris was never served and was subsequently dropped from the case by the district court.[5]

On December 11, 1973, Dravo filed its first amended complaint. It listed Hollis (owner of the building site) and American (surety for the project) as additional defendants. Dravo sought recovery against *Hollis* as a third-party beneficiary to the Muscarelle-Hollis contract. It sought recovery against *American* under the payment bond that Muscarelle had furnished under its contract with Hollis.

On June 3, 1974, Dravo moved for summary judgment against Muscarelle and American based upon its claim under the payment bond. On August 9, 1974, the district court granted the motion. It subsequently held, however, that its August 9 order was not final, but rather that its

---

3. No copies of the letter were sent to American or Hollis.

4. Dravo filed its complaint in district court under 28 U.S.C. § 1332(a)(1) (1976) (diversity jurisdiction).

5. According to the district court's opinion, July 2, 1980, Kerris, a New Jersey corporation, was never served because its registered agent informed the U. S. Marshal that he had not been

properly designated as the corporation's agent. None of the defendants filed a cross-claim or third-party complaint against Kerris, although Martin's attorney represented to the court that Robert B. Kerris, its president and director, is domiciled in New Jersey and his whereabouts known to Martin. The corporate entity, however, is defunct; Kerris' corporate charter was revoked by New Jersey on January 5, 1976.

findings would be incorporated into a later judgment.

On March 17, 1975, Muscarelle filed a claim against Martin alleging that Martin, as the guarantor of the Dravo-Kerris contract, was primarily liable to Dravo for the cost of the equipment. Muscarelle and American moved for (a) summary judgment in favor of Dravo and against Martin on the written guaranty; (b) summary judgment in favor of Muscarelle and American against Martin. On February 15, 1977, the district court entered an order denying Muscarelle's and American's motions for summary judgment and allowing Dravo to amend its complaint to include Philip W. Balsam, President of Martin and signator of the guaranty, as an individual defendant.

The case never went to trial. Instead, various hearings and discovery were conducted. On July 3, 1980, the trial court entered a final order in the case. Final summary judgment was entered: (a) in favor of Dravo and against Muscarelle and American for the principal amount of $227,-000 plus pre-judgment interest at the rate of 12.5% from Oct. 25, 1972 and post-judgment interest at the rate of 14.5%; (b) in favor of Dravo and against Martin for the face amount of the guaranty ($224,000) plus pre-judgment and post-judgment interest; and (c) in favor of Martin and against Muscarelle and American for any amounts Martin would be required to pay to Dravo.

In sum, the district court held that Muscarelle and American were primarily liable to Dravo under the payment bond; it fur-

ther held that the appellants had no right of subrogation or contribution against Martin. If, however, Dravo first satisfied the judgment against Martin, Martin would have the right to subrogate itself to Dravo's claim against Muscarelle and American.

Martin posted a letter of credit for $500,-000 to cover the judgment against it.[6] The claims against the other defendants were dismissed. Muscarelle and American brought this appeal.[7]

## DISCUSSION

### A. PAYMENT BOND

The summary judgment against Muscarelle and American was based upon a payment bond issued by American binding itself and Muscarelle, jointly and severally, for payment of any and all claims arising from material or labor provided to the Hollis project.[8] Appellants concede that Dravo is a claimant within the bond's definition of that term. They assert, however, that the district court held improperly that Dravo complied with the notice requirement for payment under that bond.

The Bond provides that before any suit may be commenced thereon, a claimant must serve:

Written notice to any two of the following: The Principal, the Owner, or the Surety . . ., within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is

---

6. Judgment against Martin, guaranteed by the letter of credit, is $15,761.67 less than that which Dravo seeks to secure against Muscarelle and American. This is because Muscarelle and American were held liable for the full purchase price of Dravo's units plus interest, whereas judgment against Martin was limited to $224,000, as specified in the caption of its letter of guaranty. Exhibit F, *reprinted in* Appendix at 261a.

7. Martin does not appeal. It has, however, filed an "appellee's" brief to safeguard whatever rights it secured under the district court's final judgment. *See* note 15 & accompanying text *infra*.

8. The payment bond provided in pertinent part:

2. The above named Principal [Muscarelle] and Surety [American] hereby jointly and severally agree with the Owner [Hollis] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.
Appendix at 84a.

made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed.

Paragraph 3(a) of Labor & Material Payment Bond—Exhibit E, *reprinted in* Appendix at 170a. The district court held that Dravo's letter of February 19, 1973, addressed to Ideal, was sufficient to comply with this notice provision.

The appellants contend that the letter did not serve as sufficient notice because: (1) it was not timely; (2) it was only given to one of the three designated parties; and (3) it did not indicate that a claim was being made under the payment bond. If the notice was defective in any one of these three ways, this court must reverse the lower court's summary judgment.

*Untimely Notice*

 Paragraph 3 of the payment bond requires that notice be given "within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which such claim is made." Appellants claim that Dravo's letter of February 19, 1973 failed to constitute timely notice because it was delivered more than ninety days after September 26, 1972, the date on which the last of the materials ordered by Kerris was delivered. It also argues that the trial court erred in selecting the date of Dravo's start-up services as the measuring date; appellants contend that even if the start-up services were services within the meaning of the bond,[9] they took place after, not before, the February 19 letter. Consequently, the February 19 letter could not be "within ninety (90) days after" the date of the last service.

We agree with the district court "[i]f September 26, 1972 is the date of last performance, then plaintiff's February 19, 1973 notice would be untimely." We disagree, however, with its holding that if we consider Dravo's completion of the start-up services as the time from which the ninety days was to be measured, then the February 19 letter was timely notice.[10]

The district court reasoned that the notice given by Dravo before it began its start-up services was timely because the bond's reference to "within" permitted the notice to be either ninety days before or ninety days after commencement of the last labor or work. The district court believed:

> It was eminently reasonable for plaintiff to notify the general contractor of this deficiency prior to engaging in its last labor or work, or last furnished materials at the job site. The word "within" itself, as a measurement of time, is variously defined. However, the concept of "within" clearly does not suggest a commencing point in time. Rather, the term is used as a terminus in time for the happening of an event. Construed strictly against the drafter, notice prior to commencing the last work, is certainly "within" 90 days after completion.

Appellant's Appendix at 190a.

We disagree with the district court's interpretation of the terms of the bond. If read in its entirety, the notice provision clearly provides that notice must be given "within ninety (90) days *after*" the services were performed (emphasis added). The plain meaning of these terms is that notice must follow the last labor or delivery and

---

**9.** *See* note 10 *infra.* Cf. *United States v. Peter Reiss Constr. Co.,* 273 F.2d 880 (2d Cir. 1959) (supplemental deliveries after last delivery do not extend Miller Act 90-day notice provision).

**10.** We will assume, arguendo, that the conclusion of the start-up services marks an appropriate alternative date for measuring the 90 day period. This issue is, however, far from clear. The bond's notice provision stated that written notice must be given 90 days of the delivery of the last of materials "for which said claim is made." If Dravo's February 19 letter was in-

tended to provide notice only for a claim on the units that had by then been delivered, and not for the start-up services yet to be performed, then the focus date for our decision would be September 26, 1972 and Dravo's notice, almost five months later, would be untimely. *But see Stauffer Constr. Co., Inc. v. Tate Eng'r., Inc.,* 44 Md.App. 240, 407 A.2d 1191, 1194 (Ct.Spec. App.1980) (The words "for which such claim and labor is made" cover all materials supplied in an indivisible contract).

that premature notice will not be considered as timely. Indeed, courts called upon to interpret similar notice provisions have held consistently that premature notice will not satisfy such a provision. *See United States v. Great American Insurance,* 537 F.2d 222, 224 (5th Cir. 1976); *National Union Indemnity Co. v. R. O. Davis, Inc.,* 393 F.2d 897, 900 (5th Cir. 1968).

In the instant case, the bond required that services must be completed before notice could be given. Although the general policy is to construe ambiguities in agreements against the drafter, *Matter of Community Medical Center,* 623 F.2d 864, 866 (3d Cir. 1980), we do not perceive an ambiguity in this case. The terms of the bond clearly state that notice must be after completion of all services or the delivery of materials.

Thus, while we recognize that New Jersey, whose law is silent on interpreting such a provision, favors subcontractors and materialmen in their right to collect under surety bonds, *see Amelco Window Corp. v. Federal Insurance Co.,* 127 N.J.Super. 342, 349, 317 A.2d 398, 402 (App.Div.1974); *Acoustics, Inc. v. Hanover Insurance Co.,* 118 N.J.Super. 361, 364, 287 A.2d 482, 483 (Law Div.1971); *Graybar Electric Co. v. Continental Casualty Co.,* 50 N.J.Super. 289, 142 A.2d 114 (App.Div.1958), we do not believe that New Jersey intended this general policy to override the language of the bond. *See Petrillo & Son, Inc. v. American Construction Co.,* 148 N.J.Super. 1, 4–5, 371 A.2d 799, 800–01 (App.Div.1977).[11] Matched against the policy in favor of materialmen are the possible reasons the parties did not provide for premature notice. For example, to allow potential claimants to give "notice" prior to work being completed may frustrate payment arrangements between a subcontractor and its supplier, *see, e. g., Great American Inc.,* 537 F.2d at 224; it may also impose on the payor of the bond the chaotic task of monitoring a multitude of "possible" claims under the bond.

Consequently, we hold that the notice provision of the payment bond should be strictly construed and enforced. Dravo failed to file timely notice; therefore, it was not entitled to judgment under the bond.[12]

### B. *THIRD-PARTY BENEFICIARY THEORY*

Dravo, in its argument to the district court, presented two other theories for recovery against the appellants. It has abandoned one of them on appeal—a claim against Muscarelle based upon an alleged oral contract. Appellee's Brief at 3. It cross-appeals, however, on its third-party beneficiary claim against Muscarelle and American. The district court rejected Dravo's alternative claims as "mooted by or merged into the adjudicated liability on the payment bond." Appellant's Appendix at 347a.

Appellee's third-party beneficiary claim is ripe for review. While we are generally reluctant to decide an issue if the trial court has not ruled on its merits, we may do so in an appropriate case. *Dandridge v. Williams,* 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 1156 n.6, 25 L.Ed.2d 491 (1970) ("The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground

---

**11.** In *Petrillo,* the court recognized that while there is a policy of law in favor of materialmen, it comes into play only in cases of doubtful or uncertain construction of the language of the bond. 148 N.J.Super. at 4–5, 371 A.2d at 801. Otherwise, "[t]he language of the bond should be given a common sense meaning and not tortured to reach a particular result." 148 N.J. Super. at 5, 371 A.2d at 801.

**12.** Appellants present two further arguments in support of their contention that the February 19 letter did not constitute adequate notice under the bond. First, they claim that notice to Ideal, Muscarelle, Martin and Kerris did not comply with the provision that notice be given to "any two of the following: The Principal, the Owner, or the Surety . . . ." Second, they contend that the February letter did not set forth "with substantial accuracy" that they were seeking payment under the bond. Because we hold that appellee's notice was not timely, and that it therefore did not meet a prerequisite for payment under the bond, we need not rule on these issues.

was relied upon or even considered by the trial court."). *See Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1124 (10th Cir. 1979); *French v. Corrigan*, 432 F.2d 1211, 1214 (7th Cir. 1970). In the instant case, the district court was given an opportunity to decide appellee's third-party beneficiary claim; it declined to do so, however, because Dravo was granted summary judgment under the payment bond. We are now reversing that judgment. Therefore, we have before us the question of whether there is any other theory, pled and briefed by the parties, to support Dravo's judgment against the appellants. Since the record before us presents all of the facts necessary to rule on appellee's alternative claim, it is proper for us to decide this question. *Lindsey*, 592 F.2d at 1124. *Cf. Dubern v. Girard Trust Bank*, 454 F.2d 565, 571 (3d Cir. 1972).

Dravo's third-party beneficiary claim is based upon the subcontract between Kerris and Muscarelle. That contract provided that Dravo units would be used in the air conditioning and ventilation system and that Muscarelle could withhold monies from Kerris if it received notice that the latter had not paid its supplier. *See* Exhibit G— Agreement between Muscarelle and Kerris, *reprinted in* Appendix at 75a, 81a. Dravo claims that the terms of this agreement demonstrate that the contracting parties intended for Dravo, as a third-party, to be a beneficiary to the terms of the contract. Specifically, appellee contends that it is entitled to the purchase price of its units, since payment of those materials by Muscarelle was provided for in its agreement with Kerris.

In deciding whether appellee is entitled to collect under the Muscarelle-Kerris contract, we must turn to New Jersey law for direction.[13] *Erie Railroad Co. v. Tompkins*,

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under New Jersey law,

> The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance.

*Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J.Super. 370, 373, 297 A.2d 203, 204 (Law Div.1972).[14] *See First Nat. State Bank of New Jersey*, 610 F.2d at 170. The issue before us is therefore whether the contract between Muscarelle and Kerris, that provided for payment of the units, was intended for Dravo's benefit.

We believe that the parties did not intend Dravo to be a third-party beneficiary to the Muscarelle-Kerris contract. Dravo was covered by both its separate contract with Kerris and American's general payment bond for the project. It was further covered by Martin's guaranty. The parties' intention appears to have been for Dravo to collect under one of these express provisions, rather than to collect as an incidental beneficiary of the provisions in the Muscarelle-Kerris contract.

New Jersey courts have been hesitant to imply a third-party beneficiary obligation without an explicit indication by the parties that not only is the claimant an incidental beneficiary of the proposed arrangement, but also that it will have a direct claim under the contract. For example, in *Houdaille Construction Materials, Inc. v. American Telephone & Telegraph Co.*, 166 N.J.Su-

---

13. All parties have agreed that insofar as the contract was entered into in New Jersey, expressly states that it is to be governed by New Jersey law, and was to be performed and affect real estate in New Jersey, New Jersey law controls in this case. *See First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. and Loan Assoc.*, 610 F.2d 164, 169 n.7 (3d Cir. 1979).

14. *See Houdaille Constr. Materials, Inc. v. American Tel. & Tel. Co.*, 166 N.J.Super. 172, 399 A.2d 324 (1979); *Borough of Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73, 77, 11 A.2d 83, 85 (1940) ("[T]he real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.")

per. 172, 399 A.2d 324 (1979), a supplier sought to recover from the owner and prime contractor for losses it had sustained when a subcontractor became insolvent and failed to pay for its supplies. Although the construction contract in that case contained provisions that the general contractor should make its payments only after receiving notice that the suppliers had been paid, the Superior Court of New Jersey held that these provisions did not create a third-party beneficiary claim on behalf of the suppliers. *Houdaille*, 166 N.J.Super. at 186, 399 A.2d at 330. The court noted that the method of application for payment was designed to protect the contractor's interests, not the defendants. *Id.* Accordingly, a general contractor, like Muscarelle, who receives some assurance that the suppliers have been paid, should not be subject to a claim by those suppliers for claims against the subcontractor.

■ We are also unconvinced that the subcontract's mention of Dravo units presents a clear indication that Dravo would have a right of payment for those units directly under the Muscarelle-Kerris contract. In its reply brief, Dravo sets forth the admitted relevant facts surrounding the signing of the agreement. It states:

14. In the course of negotiations between Hollis/Ideal and Muscarelle before the contract was signed, changes were made to reduce the total cost. One of these changes was to substitute Dravo units for the ones originally called for in the original plans and specifications.

15. Communications concerning the change referred to in paragraph 14 took place between Dravo and Muscarelle and/or Engineers, at some time before the contracts were signed . . . .

16. The change to Dravo units is reflected in Kerris' subcontract of December 21, 1971, page 1, which states:

(1) Dravo units are to be used in lieu of those specified . . . .

Dravo's Reply Brief at 5 (emphasis deleted). Dravo contends that the process which led to the Muscarelle-Kerris contract, as described above, demonstrates that the provision for Dravo units conclusively created a third-party claim on behalf of appellee.

We have reviewed the submitted communications leading to the change in the Muscarelle-Kerris contract. Additionally, we will assume for our decision, that the facts are as Dravo presents them in its brief. By Dravo's stated admission, Dravo's units were substituted into the contract not to create a right of action for Dravo, but to guarantee the general contractor and the owner a lower cost ventilation system. Accordingly, we reject appellee's argument that the surrounding facts of the drafting of the agreement demonstrate that appellee was an intended beneficiary.

As discussed above, appellee's claim against Muscarelle and American must fail under both theories it alleges. Its claim under the payment bond is improper because it did not give timely notice to appellants that Dravo had not been paid; its claim under the third-party beneficiary theory against Muscarelle fails because there is no clear indication that Muscarelle and Kerris intended Dravo to be a beneficiary of their contract. We, therefore, reverse the judgment against appellants, Muscarelle and American.

### C. *RIGHT OF SUBROGATION*

We do not disturb, however, the district court's judgment against Martin. Martin, which filed briefs as an appellee in this case, does not contest the judgment of liability against it.[15] It also does not contest the amount of interest imposed on that

---

**15.** Page 2 of Martin's brief states:

Martin does not—and will not—address the opinion and order of the District Court with respect to the finding of liability on its special guaranty of payment for and on behalf of Robert B. Kerris, Inc. ("Kerris") in

favor of Dravo. Martin urges, however, that the lower court decision relating to the primary liability of Muscarelle and American was correct, and thus, must be sustained, including the order of priority as to satisfaction of the judgment.

judgment.[16] Rather, it defends the district court's judgment and asserts that the lower court was correct in holding that Martin, as a "special guarantor", has a right to subrogate itself to Dravo's claims against Muscarelle and American.[17] Correspondingly, it argues that if the judgment against Muscarelle and American is upheld, this court should not adopt their alternative argument and grant them a right, as co-sureties or general surety, to seek contribution against Martin.

Because we reverse the judgment against appellants, we are no longer faced with the problem of which defendant is primarily liable to Dravo. Dravo may now execute judgment against Martin only. Muscarelle and American, therefore, need not seek contribution against Martin and Martin has no right of subrogation against the appellants.

## CONCLUSION

The net result of our holding is that Martin, the party that agreed to issue a special guaranty to ensure payment on the Dravo units, will be bound by its guaranty. Muscarelle, on the other hand, the party that refused to guarantee the units and acted upon sworn affidavits that Dravo had been compensated before it paid its subcontractor Kerris, will not be required to pay twice for the units.

16. All parties to this appeal have briefed extensively the issue of whether the lower court erred in the rate of interest awarded with the judgment against Muscarelle, American and Martin. However, Martin, the only party whose liability we affirm, does not contest that ruling. Rather, it states: "... Dravo seems to be entitled to the judgment rate of interest fixed by the lower court ...." and "... the rate of interest awarded by the lower court was within its discretion and fully supported by the record." Martin's Brief at 41–42. Accordingly, we will not address the issue of whether the lower court erred in setting the amount of interest due on the award to Dravo.

17. The district court did not hold that Martin has a right of contribution against Muscarelle and American. Rather, it held only that Martin was subrogated to Dravo's claims against the defendants:

8. It is declared that in the event it shall be necessary to levy execution as to Martin Mechanical Corporation, and in the event plain-

We therefore reverse the lower court's judgment against appellants Muscarelle and American and affirm it as to all other parties.

tiff Dravo, as the result thereof and of prior execution against American Insurance Company and Joseph L. Muscarelle, Inc., shall have received full satisfaction on its judgment against Martin Mechanical Corporation, Martin Mechanical Corporation shall be subrogated to the rights of plaintiff on its judgment against American Insurance Company and Joseph L. Muscarelle, Inc.

9. The right of subrogation declared in Paragraph 8 hereof shall not be exercised until and unless plaintiff Dravo shall have received, from among American Insurance Company, Joseph L. Muscarelle, Inc., and Martin Mechanical Corporation, full satisfaction on its judgment against American Insurance Company and Joseph L. Muscarelle, Inc., and, if exercised may be exercised only to the extent of such payment made by Martin Mechanical Corporation as has served to satisfy in full the judgment against it.

Final Judgment of District Court (July 2, 1980), *reprinted in* Appendix at 340a–41a.