PROCESS AND STORAGE VESSELS, INC., a Delaware corporation, Plaintiff,

v.

TANK SERVICE, INC., an Oklahoma corporation, and Aetna Casualty and Surety Company, a Connecticut corporation, Defendants.

Civ. A. No. 81–467.

United States District Court, D. Delaware.

June 23, 1982.

William J. Cattie of Heckler & Cattie and John C. Phillips, Jr., Wilmington, Del., for plaintiff.

David A. Drexler and Donald E. Reid of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

LATCHUM, Chief Judge.

This contractual dispute centers on the terms of a payment bond executed by defendant, Aetna Casualty and Surety Company ("Aetna"), as surety for defendant, Tank Service, Inc. ("Tank"), in connection with the construction of two sewage treatment tanks in Genesee County, New York. Plaintiff, Process and Storage Vessels, Inc. ("Process"), claims to have completed certain subcontract work for Tank, for which

it has allegedly not been fully compensated. As part of the complaint filed in this case, Process seeks to recover from Aetna the unpaid balance due from Tank, pursuant to the terms of the payment bond. Presently before the Court is Aetna's motion for summary judgment on the grounds that: (1) Process' suit was filed after the one-year limitation provision contained in the payment bond had expired; and (2) the forum selection clause contained in the bond, which stipulates that suits arising out of the bond must be commenced in New York, bars maintenance of the suit in this Court. Because the Court agrees that suit on the payment bond can only be brought in New York pursuant to the forum selection clause, it will enter summary judgment in favor of Aetna.

## I. FACTS

Prior to the Fall of 1978, the village of Oakfield in Genesee County, New York, entered into a contract with Petronio Construction Company for the erection of two sewage treatment facilities. (Docket Item ["D.I."] 24, ex. D.) The prime contractor thereafter subcontracted a portion of the work to Lyco, a division of Remsco Associates, Inc. ("Lyco"), and Lyco in turn entered into a second tier subcontract with Tank on September 8, 1978, to perform part of the construction. (D.I. 24, ex. A.) As a condition of this subcontract, Tank was required to obtain a performance bond and a labor and material payment bond in favor of Lyco. Both bonds were issued by Aetna on September 22, 1978, naming Tank as principal, Aetna as surety, and Lyco as obligee. (D.I. 24, ex. B & C.)

By a third tier subcontract dated October 26, 1978, Tank delegated to Process all the work it had agreed to perform under its subcontract with Lyco. (D.I. 1.) Process commenced work on the project in November, 1978, and continued until June 19, 1979, when it ceased all work on the uncompleted sewage facilities. (D.I. 9, Rinehart Affidavit.) Subsequently, three different lawsuits, involving various combinations of the participants in the construction project, were filed—two in New York and one in this Court.[1] In the present suit, Process seeks damages against Tank based on breach of contract and *quantum meruit.* In addition, the complaint further seeks recovery from Aetna of monies owed to Process by Tank, under the labor and material payment bond executed by Aetna. Tank and Aetna have interposed various affirmative defenses which purportedly bar any recovery by Process. In addition, Tank has counterclaimed for approximately $20,000 in damages against Process, on the ground that Process failed without sufficient justification to complete the work it had agreed to perform.

The labor and material payment bond executed by Aetna has a face value of $55,619.00. (D.I. 24, ex. B.) The bond provides that parties having contracts with Tank for labor and/or material in connection with the construction of the sewage facilities in Oakfield may sue on the bond for payment of any monies due to them from Tank which have not been paid within 90 days after the services or materials are furnished. The amount of the bond would be reduced by any payment made in good faith to a claimant. Disbursements under the bond, however, are subject to several conditions. As pertinent, these conditions provide:

(3) No suit or action shall be commenced [under the bond] by any claimant,

(a) After the expiration of one (1) year following the date on which Principal ceased work on said subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the

1. The two New York actions are: (1) *Lyco, a division of Remsco Associates Inc. v. Tank Service, Inc., and Aetna Casualty and Surety Company*, C.A.No. 79–CIV–5781 (KTD) filed in the United States District Court for the Southern District of New York; and (2) *Tank Service, Inc. v. Village of Oakfield, Carl Petronio Construction Co., Inc., Lyco a Division of Remsco Associates, Inc.*, filed in the Supreme Court of New York for Genesee County. (D.I. 19 at 4.)

minimum period of limitation permitted by such law.

(b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

(*Id.*)

It is undisputed that Tank, the principal, ceased work on the contract prior to July 1, 1979 (D.I. 2, Rinehart Affidavit),[2] and that the action for recovery under the payment bond was not commenced in this Court until October 21, 1981, some fifteen months after the limitation period specified in the bond had expired. (D.I. 1.) Thus, Aetna argues that the suit on the payment bond is barred and that summary judgment must be entered in its favor. Alternatively, Aetna argues that under the forum selection clause contained in the bond, an action for recovery may be brought only in the state or federal court in which any part of the sewage treatment construction project was situated. Because the project was located in its entirety in Genesee County, New York, Aetna contends that this Court is an improper forum in which to bring this suit, and the suit must be dismissed on this independent ground.

Process does not dispute Aetna's interpretation of the limiting provisions contained in the bond. Instead, Process contends that

because the bond was executed in Oklahoma, under choice of law principles, the substantive law of that state must govern the validity and construction of its terms. Because both the contractual limitation period and the forum selection clause purportedly would be void under Oklahoma law,[3] Process argues that its complaint was timely filed and that suit properly may be brought in this Court, since the appropriate jurisdictional and venue prerequisites have been met. Alternatively, Process argues that Aetna is estopped from relying upon the one-year limitation period as a bar to this suit because Process refrained from bringing suit within the one-year period at Aetna's request. In addition, Process contends that the forum selection clause cannot be enforced against claimants under a bond, like Process, who were not parties to the bond negotiations and did not freely consent to the restrictive venue provision.

## II. CONTRACTUAL LIMITATION PERIOD

Whether or not the contractual limitation period is enforceable as a matter of law will depend on what state's substantive law governs the terms of the bond. If, as Process argues, Oklahoma law controls, then the one-year limitation provision in all likelihood would be void, and Process' suit would be timely under the longer limitations period for contract actions provided by statute.[4] If, however, the substantive law of Delaware, New Jersey or New York, the only other states having some practical nexus to

**2.** Because Tank delegated to Process all the work it had agreed to perform under its subcontract with Lyco, the date that Tank ceased work for purposes of the payment bond must be viewed as the date on which Process ceased work. It is undisputed that Process abandoned all work on the sewage project before July 1, 1979.

**3.** 15 Okla.Stat. § 216 provides:

Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void. In addition, the Constitution of Oklahoma provides:

Any provision of any contract or agreement express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand or liability shall be null and void. Oklahoma Constitution, Article 23, § 9.

Process relies on these two provisions to support its contention that the one-year contractual limitation provision and forum selection clause contained in the bond would be void under Oklahoma law.

**4.** Oklahoma has a five-year statute of limitations for general civil actions. 12 Okla.Stats. § 95.

the events in question, is to be applied, then the limitation period would be valid, since all three states allow private parties to agree contractually to a shorter limitation period to govern potential controversies. *See Rumsey Electric Co. v. University of Delaware,* 334 A.2d 226, 229 (Del.Super. 1975), *aff'd,* 358 A.2d 712 (1976); *Brandywine One Hundred Corp. v. Hartford Insurance Co.,* 405 F.Supp. 147, 151 (D.Del.1975); *V. Petrillo & Sons, Inc. v. American Construction Co.,* 148 N.J.Super. 1, 371 A.2d 799, 801 (App.Div.1977), *cert. denied,* 75 N.J. 4, 379 A.2d 235 (1977); *Raymond International Inc. v. City of New York,* 511 F.Supp. 773, 776 (S.D.N.Y.1981).

Obviously, the Court must look to Delaware choice of law rules to determine what substantive law to apply. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Aetna argues that because the limitation provision is essentially a matter of procedure, affecting the remedy and not the substantive rights guaranteed by the bond, the enforceability of the provision must be determined by the substantive law of the forum, i.e., Delaware law. Process responds that under prevailing conflicts rules, the law of the place where the contract is formed determines the validity and construction of its terms. This argument presupposes that the contractual limitation provision is a substantive, rather than mere procedural, term.

Delaware courts have in the past recognized both principles upon which the parties' respective arguments are based. Procedural matters or issues relating to remedies traditionally have been determined according to the law of the forum. *See e.g., Perez v. Shortline Inc. of Pennsylvania,* 231 A.2d 642, 643 (Del.Super.1967), *aff'd,* 238 A.2d 341 (Del.Super.1968); *Elect. Research Products v. Vitaphone Corp.,* 20 Del.Ch. 417, 171 A. 738, 748 (1934). Just as clearly, where substantive issues of interpretation of a contract are involved, the courts have in the past applied the law of the state in which the contract was made. *See e.g., Oliver B. Cannon & Son Co., Inc. v. Dorr-Ol-*

*iver, Inc.,* 312 A.2d 322, 325 (Del.Super. 1973); *Norse Petroleum A/S v. Lvo Intern Inc.,* 389 A.2d 771, 773 (Del.Super.1978); *Unit, Inc. v. Kentucky Fried Chicken Corp.,* 304 A.2d 320, 327 (Del.Super.1973). As Judge Schwartz of this Court recognized in *Sellon v. General Motors Corp.,* 521 F.Supp. 978 (D.Del.1981), however, the courts of this state more recently have moved away from wooden application of these rules toward the more functional standards advocated by the Restatement (Second) Conflict of Laws. *Id.* at 981; Restatement (Second) Conflict of Laws § 188(1) at 575; *see Oliver B. Cannon & Son v. Dorr-Oliver Inc.,* 394 A.2d 1160, 1166 (Del.Super.1978); *Tew v. Sun Oil Co.,* 407 A.2d 240, 242 (Del.Super.1979). Accordingly, it is to the Restatement that this Court must now turn in deciding the choice of law issue.

The Restatement distinguishes between conventional situations in which the timeliness of an action is measured by a limitation period set forth by statute and those contexts in which the statutory period within which to sue has been contractually shortened by the parties. In the former situation, local law generally determines whether an action is time-barred, out of deference to the interest of the forum in protecting both litigants and local courts against prosecution of stale claims. Restatement (Second) Conflict of Laws § 142 at 396 and Comment. The validity of a shorter contractual provision, however, is treated like any other substantive right or duty under the Restatement. Whether the provision is enforceable or not is determined by the law of the state that has the "most significant relationship" to the underlying transaction itself and the parties. Restatement (Second) Conflict of Laws § 142 Comment (c) at 396; § 188 at 575. In applying this principle, the Court must consider: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the

parties. Restatement (Second) Conflict of Laws § 188(2).[5]

■ Although, on the present record, no one state has an insurmountable claim to application of its own law, New York appears to have the most significant relationship to the events in question and the parties. Generally, the validity of a suretyship contract and the rights created thereunder will be determined by the law which governs the principal obligation—in this case the underlying subcontract between Lyco and Tank for which the payment bond was issued. Restatement (Second) Conflict of Laws § 194 and Comment. Performance of the subcontract between Lyco and Tank, and the third tier subcontract between Tank and Process was to occur in Genesee County, New York. Correspondingly, the payment bond likewise was to be performed in New York, where the construction work which the bond insured was to be completed. *See American State Bank v. United States Fidelity & Guaranty Co.*, 331 F.2d 479, 481 (7th Cir. 1964). Because all parties to the principal contract were to perform their respective obligations in New York, and the other arguable contacts to be taken into account are dispersed among several

states,[6] none of which appears to have a larger stake in the controversy, this performance factor is singularly persuasive on the choice of law issue. New York substantive law, accordingly, must govern this suit.

Under New York law, the one-year contractual limitation provision contained in the bond is enforceable. Out of concern that the Court might reach this conclusion, Process alternatively argues that Aetna is estopped from asserting the one-year period as a bar to this suit, because Process refrained from filing suit in a timely manner at Aetna's request. In support of this contention, Process points to certain letters sent by defendants' counsel to Process. These letters are said to establish that Tank and Aetna, which were then involved in ongoing litigation with Lyco in New York, sought to enlist Process' cooperation in the Lyco suit, and specifically requested Process to forbear from initiating its own lawsuit while the Lyco suit was pending. In addition, two months after the one-year limitation period had expired, defendants' counsel advised Process that it intended to make a proposal to settle Process' claim against Tank.[7]

---

5. As demonstrated above, the Restatement has not abandoned entirely the settled procedural/substantive classifications previously recognized by the decisional law of Delaware and other states. Unequivocal procedural issues, like pleading requirements, service of process, and trial administration, generally continue to be governed by the law of the forum. *See e.g.,* Restatement (Second) Conflict of Laws §§ 123–144. Nonprocedural issues arising from contractual disputes, on the other hand, are no longer determined simply by the law of the place where the contract was formed. Instead, the place of contracting is but one factor to be considered in deciding which state has the most significant relationship to the transaction and the parties. *Id.* at § 188 and Comment. Thus, the Restatement has discarded the rigid "last act" rule whereby the place of making the contract, normally the locality in which the final act necessary for its formation occurs, would determine the validity and construction of its provisions, despite the fact that the state may have no interest whatsoever in the outcome of the dispute.

6. The pertinent parties to the bond, Lyco, Tank and Aetna, are incorporated, with their principal places of business, in New Jersey, Oklaho-

ma, and Connecticut, respectively. (D.I. 1; D.I. 24, ex. D.) The bond was signed in Oklahoma by Tank's president and a local attorney, appointed by Aetna solely to execute certain contracts on Aetna's behalf. (D.I. 24, ex. B & C.) There is no evidence that any of the substantive negotiations leading up to the bond took place in Oklahoma, or that the site of execution of the bond was chosen for any reason other than to accommodate Tank. The underlying subcontract between Lyco and Tank, which the payment bond was adjunct to, apparently was signed by Tank in Delaware, and Lyco in New York. (D.I. 24, ex. A.) In addition, during the course of these negotiations, it was determined that Tank would furnish performance and payment bonds to Lyco. (*Id.*) Finally, as an ancillary matter, Process is incorporated, with its principal place of business, in Delaware, and the subcontract between Process and Tank apparently was executed in Delaware. (D.I. 1; D.I. 6.)

7. In support of its estoppel argument, Process simply reproduced selected portions of two letters in its brief in opposition to Aetna's summary judgment motion. Ordinarily, the Court would be constrained to reject this information

In the context of this summary judgment motion, the Court must determine as a threshold matter only whether any genuine issue of material fact exists. As the Court of Appeals for the Third Circuit has indicated time and time again, in evaluating whether such factual disputes are present, a court must resolve all inferences, doubts or issues of credibility in favor of the opposing party. *See e.g., Hollinger v. Wagner Min. Equipment Co.*, 667 F.2d 402, 405 (3d Cir. 1981); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Suchmajcz v. Hummel Chemical Co.*, 524 F.2d 19, 24 (3d Cir. 1975). Summary judgment is simply inappropriate "where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974). It is against this stringent standard that the Court must measure the propriety of summary disposition of the estoppel issue.

Although the evidence does not establish that Aetna specifically asked Process to refrain from seeking recovery under the bond during the one-year limitation period, the letters do indicate that Process cooperated with Aetna and Tank in their endeavor to defend the Lyco suit, and that certain settlement discussions concerning Process' claim against Tank may have been ongoing. On March 28, 1980, Process' president, Charles Kerin, and attorney, David Williams, met with Donald Berens, who was representing both Aetna and Tank in the then pending Lyco litigation in New York (D.I. 24), to discuss the status of that suit. Apparently, Process claimed at the time that Tank owed it an outstanding sum of approximately $21,000 for work performed on the sewage treatment facilities. Tank, in turn, claimed that Process had failed to complete its duties under the subcontract and that the extra work for which Process sought payment had been authorized not by Tank, but by Lyco. In addition, Tank apparently may have further asserted that its obligation to make partial payments to Process was conditioned on its receiving compensation from Lyco, and that Tank's refusal to pay Process stemmed from Lyco's corresponding failure to pay Tank.

In a letter dated April 3, 1980 to Berens, Williams disputed Tank's failure to pay his client, but further indicated:

> While [Process] is not presently inclined to pursue its independent contract rights against [Tank], [Process] cannot be expected to wait indefinitely. Thus, I am authorized to indicate that [Process] will bear with [Tank] for a reasonable period of time provided [Tank] diligently pursues its claim against Lyco. In this regard, [Process] will continue to cooperate in the prosecution of [Tank's] claim against Lyco and would appreciate being kept informed as to the status of the [Tank]-Lyco litigation.

In response, Berens wrote to Williams on April 24, 1982:

> I appreciate your courteous indication that [Process] will bear with [Tank] for a reasonable period of time. [Tank] indicates that [Process] did not complete the job. [Tank] also indicates that most of the money owed to [Process] has to do with extra work which was performed by [Process] upon the approval of Lyco but without the approval of [Tank]. I am inclined to hold these issues in abeyance pending resolution of the disputes between [Tank] and Lyco.

In another letter to Charles Kerin dated September 2, 1980, Berens thanked Kerin for Process' assistance in preparing answers to the Lyco action and commented:

on the ground that only facts shown to exist by affidavits, depositions, admissions or other such sources may properly be considered on a summary judgment motion and a court may not rely upon unauthenticated factual allegations contained in memoranda of counsel. *Miller v. Peeples*, 456 F.Supp. 38, 43 (N.D.Miss. 1978); 10 Wright & Miller, Federal Practice & Procedure § 2722. In this case, however, Aetna's counsel attached to its reply brief in support of the summary judgment motion, copies of the two letters in their entirety, as well as an additional letter addressing the same issues, and the authenticity of the documents has not been seriously disputed. Accordingly, the Court will consider the letters in passing upon the summary judgment motion.

With your assistance, we have documented the claim of [Tank]. As we have discussed many times, I know that you feel strongly that the claim is a good one which would enable [Tank] to be paid and therefore enable [Process] to be paid. . . . [Tank] has decided to try to settle the case before trial. I have advised Lyco's attorneys of our willingness to discuss the matter. No figures have yet been mentioned. I know that you understand the approach of [Tank] even if you might disagree with it. We intend to keep you advised and to make a proposal to settle [Process'] claim against [Tank] which is appropriate in the light of whatever response Lyco makes to our approaches.

■ The foregoing facts may possibly make out a case for waiver of the one-year limitation period or estoppel to enforce it. Under New York law, a misrepresentation by a defendant or his agent[8] upon which a plaintiff relies to his detriment may be sufficient to defeat an otherwise valid limitation defense, even though the misrepresentation may have been innocently made, viz., without any intent to deceive. *Gross v. Newburger, Loeb & Co., Inc.*, 103 Misc.2d 417, 426 N.Y.S.2d 667 (1980), *modified on other grounds*, 85 A.D.2d 709, 445 N.Y.S.2d 830 (1981); *see Florio v. General Acc. Fire & Life Assur. Corp.*, 396 F.2d 510, 514 (2d Cir. 1968); *Peters v. St. Paul Fire & Marine Ins. Co.*, 213 F.Supp. 441, 442 (S.D.N.Y. 1963). If, in fact, Process was lulled into inactivity by some implied agreement between the parties to hold their dispute in abeyance until resolution of the Lyco litiga-tion, Aetna may appropriately be precluded from pleading the limitation period as a bar to this suit. In any event, the Court cannot conclude that there are absolutely no genuine issues of material fact in dispute on the estoppel issue and summary judgment on this basis accordingly cannot be rendered at this time.

## III. FORUM SELECTION CLAUSE

Aetna alternatively argues that summary judgment must be entered in its favor because, under the forum selection clause contained in the bond, all suits for recovery must be brought in New York. Consistent with its position on the limitation provision, Process primarily responds that the forum selection clause is void under Oklahoma law and cannot be enforced.

■ There is some dispute as to whether the enforceability of forum selection clauses in diversity cases is a matter of federal or local concern. Some courts have looked to federal law to provide the rule of decision, *see e.g., Taylor v. Titan Midwest Const. Corp.*, 474 F.Supp. 145, 147 (N.D.Tex.1979); *St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.*, 401 F.Supp. 927, 929 (D.Mass.1975), while other courts have held that state law must govern the propriety of enforcing such clauses, *see e.g., Leasewell Ltd. v. Jake Sheton Ford, Inc.*, 423 F.Supp. 1011, 1015 (S.D.N.Y.1976); *Davis v. Pro Basketball, Inc.*, 381 F.Supp. 1, 3 (S.D.N.Y.1974). The Court need not reach this issue here, however, because the state substantive law which would arguably be applied in this case substantially conforms

---

**8.** Aetna argues that in these exchanges Berens was acting as attorney only for Tank and that no specific representations were made on behalf of Aetna. In addition, an affidavit filed by Gregory M. Corrigan, an Aetna representative, states that Berens had actual authority to represent Aetna solely in the Lyco litigation and had no authority to represent Aetna with respect to its obligations under the payment bond. (D.I. 24.) Thus, any waiver or estoppel in this case arguably cannot be assessed against Aetna. Although Process has not attempted to counter these allegations by affidavit or otherwise, the Court is nonetheless not convinced that Berens did not possess some apparent authority to act on Aetna's behalf with respect to claims arising out of the payment bond. At the time of the events in question, Berens was representing both Tank and Aetna in the Lyco litigation. Process' cooperation in the Lyco suit, moreover, was essential both to Tank's avoidance of liability for breach of contract and Aetna's attempt to avoid payment under the performance bond. Thus, Aetna as well as Tank, stood to profit from Process' cooperation, a fact of which Aetna was presumably aware. On this record, a question of fact may exist as to whether Aetna's conduct could reasonably have been interpreted by Process as creating an agency relationship in Berens.

to the federal approach to forum selection clauses. *See Kline v. Kawai American Corp.*, 498 F.Supp. 868, 871 (D.Minn.1980); *Cruise v. Castleton, Inc.*, 449 F.Supp. 564, 568 (S.D.N.Y.1978). The law of both Delaware and New York,[9] as well as federal decisional law, acknowledges as a general proposition that private parties may agree to conduct all potential litigation arising out of a contract in a single jurisdiction. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir. 1966); *Alwinseal Inc. v. Travelers Indemnity Co.*, 402 N.Y.S.2d 33 (N.Y.Supr.App.Div. 1978); *Elia Corp. v. Paul N. Howard Co.*, 391 A.2d 214 (Del.Super.1978). These forum selection clauses are generally honored so long as enforcement at the time of litigation would not place any of the parties at a substantial and unjust disadvantage or otherwise deny a litigant his day in court. *The Bremen v. Zapata Off-Shore Co., supra,* 407 U.S. at 15, 18, 92 S.Ct. at 1916, 1917. Such agreements are prima facie reasonable, moreover; the resisting party must allege facts sufficient to prove that enforcement would be unfair or that the clause must be declared invalid because of fraud or overreaching. *Id.* at 15, 92 S.Ct. at 1916. *Copperweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953, 965 (3d Cir. 1978); Restatement (Second) Conflict of Laws, § 80.

Process has adduced no evidence whatsoever to support a conclusion that enforcement of the forum selection clause would be unreasonable. *See St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.*, 401 F.Supp. 927, 930 (D.Mass.1975). To the contrary, the construction project was located entirely in New York and many of the witnesses and evidence to be presented at trial will undoubtedly be found in that state. In addition, most of the parties to this suit have offices within an acceptable distance of Genesee County, New York, and litigation there would not be so practically inconvenient as to impair Process' ability to pursue its claim. Finally, as the facts of this case indicate, Process is no doubt accustomed to transacting business in distant states and has both the capability and financial resources to litigate effectively in New York. *See Cruise v. Castleton, Inc.*, 449 F.Supp. 564, 569–70 (S.D.N.Y.1978). Thus, although New York may not be the most convenient forum for Process, it is by no means an unreasonable site in which to seek recovery under the bond. *Id.* at 569.

Process finally argues that a forum selection clause cannot be binding upon individuals, like itself, who were not parties to the underlying agreement and did not freely consent to the limiting venue provision. The short answer to this contention is that one who seeks to enforce a contract as a third-party beneficiary is bound by the terms and conditions of the agreement and has no greater rights than those of the contracting party through which it claims. *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 378 (D.C.Cir.1976); *Rotermund v. United States Steel Corp.*, 474 F.2d 1139, 1142 (8th Cir. 1973). A third-party simply cannot accept the benefits, and at the same time attempt to avoid the burdens or limitations, of a contract. *Trans-Bay Engineers & Builders, Inc. v. Hills, supra,* 551 F.2d at 378. Moreover, to the extent a third-party beneficiary is in need of safeguards against the selection of a palpably inappropriate forum, that protection is amply supplied by the "reasonableness" requirement. As a practical matter, it is unlikely that a third-party beneficiary will be forced to abide by the terms of an inequitable forum limitations clause.

Summary judgment will be entered in favor of Aetna and against Process on the ground that this Court is an improper forum in which to seek recovery under the

---

**9.** If the Court were to apply state law, the following results would obtain: if the forum selection clause were characterized as a procedural term, then enforceability would be judged by Delaware law. If, however, the forum selection clause were regarded as a substantive provision of the bond, under the "most significant relationship" test, New York law would apply. Under none of the pertinent tests, would Oklahoma law emerge as the governing law.

payment bond. An appropriate order will be entered in accordance with this opinion.