220 N.J. Super. 560 (1987)
533 A.2d 55
MARIE KNIGHT, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WILLIAM KNIGHT, PLAINTIFF-RESPONDENT,
v.
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 13, 1987.
Decided October 27, 1987.
*561 Before Judges J.H. COLEMAN and HAVEY.
Kraft & Hughes, attorneys for appellant (Mark F. Hughes, Jr., on the brief).
Jack N. Frost, attorney for respondent.
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
The issue raised in this appeal is whether a retirement and life insurance policy had been cancelled under its cash surrender provision before the death of the named insured. In an action against the insurer for payment of death benefits, the trial judge determined that the insurer was obligated to pay death benefits less premium loans and interest. Following the denial of a motion for a new trial, the insurer filed this appeal. We now affirm.
On December 15, 1978 the New England Mutual Life Insurance Company (New England) issued a retirement income/death benefit policy # 5652610 to the Knight Trucking Retirement Plan insuring the life of William G. Knight. The primary beneficiary of the policy was the wife of the insured, Marie Knight. New England received premium payments from March 5, 1979 through December 15, 1981. The policy, however, contained an automatic premium loan clause which prevented the policy from lapsing. Premiums were paid automatically *562 when due from the policy's current cash surrender value. New England charged interest on the loan. The policy provided that automatic premium loans would continue until the cash surrender value of the policy was no longer sufficient to cover the unpaid premiums.
The contract also contained a disability premium waiver clause which suspended the premiums and the automatic premium loan provision, while keeping the policy in effect, should the insured become disabled within the terms provided by the contract.
This retirement income/death benefit policy was one of two policies issued by New England to the Knights. The other policy, # F129464, was also a life insurance policy which named William G. Knight as the insured. The latter policy is not involved in this case.
On December 7, 1983 Marie Knight, the named beneficiary, sent a letter to New England stating, "We wish to surrender policy # 5652610 as of December 15, 1983. Please send me the necessary forms to complete." With respect to cancellation, the policy provides, "this policy may be surrendered for its net cash value, which shall be the cash value of the Policy and of any additions and accumulated dividends and unpaid dividend, less any indebtedness to the Company on the Policy." The contract is silent as to what procedure should be followed to effectuate its cash surrender provision.
After receipt of the December 7, 1983 letter, New England in February 1984 mailed a check for $8,595.71 to the Knight Trucking Retirement Plan as the cash surrender value of the policy. The check contained the statement that the "endorsement of this check constitutes ratification of election to surrender the above contract(s)." The Knights returned this check shortly after receiving it in February of 1984. They contended that the amount was too little because the insured had been disabled from October 10, 1981 to February 15, 1982, and that *563 there should have been a waiver of premiums for that period. They thought the check should have been for about $23,000.
On March 1, 1984 William Knight wrote to his insurance agent. The agent was employed by the Kronish Agency, an independent agency authorized to write insurance for New England. The March 1 letter informed New England that the insured was disabled from October 1981 until February 1982 when he returned to work for a new employer and that the premium should have been discontinued as of October 1981. The letter also stated that the insured wished to cancel the policy and requested the forms necessary to complete the cancellation.
On March 8, 1984 William Knight completed a transfer of ownership request form for policy # 5652610 changing the ownership of the policy from the Knight Trucking Retirement Plan to himself apparently because he was no longer self-employed. The request for a disability waiver of premium was referred to the claims department of New England on March 26, 1984. On April 4, 1984 William Knight wrote a letter to New England stating that the delay in filing a disability claim was due to a failure on the part of New England's agent who allegedly failed to report Mr. Knight's disability claim to the main office. On June 19, 1984 the Knight's insurance agent wrote to New England requesting the company to check the outstanding loan balance as the agent apparently believed the balance was more than the $8,595.71 check.
In the latter half of June 1984 New England completed its review of the Knight disability claim and rejected the same. On July 20, 1984 William G. Knight died. Marie Knight then made a death benefit claim with the insurer which was denied. On November 26, 1984 New England issued a second cash surrender check for $8,595.71 payable to the estate of William Knight. This check contained the same endorsement language as the first check. Marie Knight rejected this check and *564 instituted suit in the Chancery Division to compel payment of death benefits.
In this appeal, New England contends that the letter from the Knights dated December 7, 1983 was an acceptance by the insured of New England's continuing offer to pay the cash surrender value of the policy thereby ending the insurance contract. In the alternative, New England contends that if the Knights' letter was an offer to surrender the policy, that offer was accepted by New England when it mailed to the Knights a check for the correct cash surrender value because New England did not require additional forms to be signed by the insured.
The procedure which must be followed to effectuate a surrender of a retirement/death benefit policy is controlled by applicable statute, the insurance contract or mutual consent. Meier v. New Jersey Life Ins. Co., 101 N.J. 597 (1986). In Meier our Supreme Court stated:
It is well-established that as a general rule neither the insurer nor the insured has any power to rescind, cancel, surrender or abandon a contract of insurance except by virtue of some statute, the terms of the contract, the mutual consent of the parties through an extraneous agreement, or a reserved power in the contract like that of unilateral cancellation. [Id. at 618]
The parties agree there is no controlling statute. It is also clear that the insurance contract is ambiguous regarding the procedure to be followed.
The insurance contract provides: "This policy may be surrendered for its net cash value, which shall be the cash value of the Policy and of any additions and accumulated dividends and unpaid dividend, less any indebtedness to the Company on the Policy." As the trial judge observed, the contract drafted by New England does not contain any provision which advised the insured of who may offer the policy for cancellation, or the conditions under which it must be offered, or what procedure should be followed to effect a cancellation.
Contrary to New England's argument that Marie Knight's letter of December 7, 1983 surrendered the policy, the policy is *565 silent as to whether a letter written by the beneficiary will satisfy the contract's requirements for a surrender. As the written insurance policy offers no clues as to what actions will constitute a surrender, we must follow the other dictates of Meier.
In determining whether a policy has been terminated through mutual consent, Meier is instructive. It places the burden of proof on the party alleging a cancellation to establish the elements of a contract. A meeting of the minds, or mutual assent is one of the required elements of such a contract. Id. at 619. "[A] mere proposal by the insured to cancel his policy is insufficient unless it is accepted by the company." Id. at 620. A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract. Hillsdale Nat. Bank v. Sansone, 8 N.J. Super. 497, 500 (Law Div.), aff'd 11 N.J. Super. 390 (App.Div. 1951).
The trial judge in the bench trial applied the controlling legal principles. He made the following factual determinations: (1) Mrs. Knight's letter contained a request for forms and therefore evidenced a mere interest to surrender the policy; (2) the check sent by the insurance company conditioned the surrender on the endorsement of the check; (3) Mrs. Knight returned the check sent to her by New England therefore the condition on the check was not satisfied; (4) New England effected a change of ownership for the policy demonstrating that the policy was still in effect as there would be no reason to change the ownership of a policy that was cancelled; (5) the insurance company processed a disability claim for the policy after the date the insurer claimed that the policy was cancelled; and (6) after learning that the disability claim was denied the Knights cancelled another smaller policy # F129464, not the larger policy in question. Based on these facts, the trial judge found that the negotiations between the parties were not complete. The change in ownership was effectuated because Mr. Knight was no longer employed by Knight Trucking. Also, the *566 disability claim was processed because if it was valid, that would reduce the amount of the premium loan against the policy thereby increasing its cash surrender value. Based on our careful study of the record, the trial judge's factual findings are supported by sufficient credible evidence and we find no warrant to disturb them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974).
Therefore, we fully agree with the trial judge that there was no new contract for termination as required by Meier. The parties had not come to an agreement respecting the cash surrender value of the policy. Agreement as to consideration, which here means the cash surrender value, is basic to contract law. Consequently, there was no mutual consent for termination. At the time of Mr. Knight's death on July 20, 1984, there was only a mere proposal by the insured to cancel his policy.
We have considered the remaining contentions raised by New England and in view of the facts and controlling legal principles, we find they are clearly without merit. R. 2:11-3(e)(1)(A), (C) and (E). The judgment under review is therefore affirmed.
Affirmed.