AIR MASTER SALES CO., Plaintiff,

v.

NORTHBRIDGE PARK CO-OP,
INC., Defendant.

Civ. A. No. 90–725.

United States District Court,
D. New Jersey.

Sept. 19, 1990.

Gary A. DeVito, Zarwin & Baum, P.C., Audubon, N.J., for plaintiff.

Steven Pontell, Verde, Steinbeg & Pontell, Fort Lee, N.J., for defendant.

## ORDER

LECHNER, District Judge.

This diversity contract matter is before the court on motion of defendant Northbridge Park Co–Op, Inc. ("Northbridge") for summary judgment and on cross-motion of plaintiff Air Master Sales Co. ("Air Master") for summary judgment. Jurisdiction appears to be appropriate. *See* 28 U.S.C. § 1332. For the reasons set forth below, the motion by Northbridge is granted; the cross-motion by Air Master is denied.

*Facts* [1]

A. Procedural History

On 29 August 1989, Air Master filed an action against Northbridge in the Eastern District of Pennsylvania. This action was dismissed on or about 7 December 1989 for lack of personal jurisdiction. *See* Memo-

---

1. In support of its motion for summary judgment, Northbridge submitted the following: Certification of Steven Pontell, Esq., dated 5 July 1990, (the "Pontell Cert."); Certification of Steven Pontell, Esq., dated 11 September 1990, (the "Second Pontell Cert."); Certification of Edward Frank, dated 5 July 1990; Brief in Support of Defendant's Motion for Summary Judgment (the "Northbridge Brief"); and Reply Brief in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Cross Motion for Summary Judgment (the "Northbridge Reply Brief").

In opposition to the Northbridge motion for summary judgment and in support of its cross motion for summary judgment, Air Master submitted the following: Certification of Gary A. DeVito, Esq., undated, (the "DeVito Cert."); Supplemental Certification of Gary A. DeVito, Esq., undated, (the "DeVito Supplemental Cert."); Certification of Daniel Monaco, undated, (the "Monaco Cert."); and Plaintiff's Brief in Support of its Answer to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment (the "Air Master Brief").

randum in Support of Order regarding *Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*, Civ. No. 89–6276, dated 5 December 1989 ("Memorandum"), 1989 WL 149967.

On or about 27 February 1990 the instant action was filed by Air Master this district. A scheduling conference was held on 25 May 1990. A bench trial is scheduled for 24 September 1990.

The first count of the Complaint in this action contends Northbridge breached a direct agreement with Air Master, which agreement resulted from negotiations between Air Master and Northbridge. The second and third counts of the Complaint contend Air Master relied to its detriment on the approval by Northbridge of windows it manufactured and specially manufactured windows for Northbridge. It is also contended in these counts Northbridge was fully knowledgeable that Air Master was proceeding with the manufacture of these windows. The fourth count contends Air Master was an intended beneficiary of a contract between Northbridge and Tri-State Window Outlet, Inc. ("Tri-State"). The fifth count contends Tri-State was acting as an agent, servant and employee of Northbridge.[2]

B. Undisputed Facts

Northbridge is a New Jersey corporation with its principal place of business at 2200 North Central Road, Fort Lee, New Jersey. Northbridge is the owner of a multiple dwelling residential apartment building at that address (the "Apartment Building"). Air Master is a Pennsylvania corporation and is in the business of manufacturing and selling aluminum replacement windows and doors. Tri-State is also a New Jersey corporation and is in the business of installing and servicing windows.

On 17 December 1987, Tri-State entered into a contract with Northbridge (the "Tri-State Contract"). *See* Exhibit A to the Monaco Cert. The terms of the Tri-State Contract indicate that Tri-State would provide and install an estimated 2,444 windows at the Apartment Building for a cost of $452,140.00. *Id.* at ¶ 3. The Tri-State Contract also indicated that the windows to be installed would "be Air Master's White Aluminum A2.5 Replacement Tilt Window, model 302, with custom made exterior panning and interior aluminum snap trim." *Id.*, ¶ 2. This contract was only between Tri-State and Northbridge. There is nothing to suggest Air Master had any standing under the Tri-State Contract to require Tri-State to comply with its terms and install the Air Master windows at the Apartment Building.

Apparently in an attempt to discharge its obligations under the Tri-State Contract, Tri-State entered into a contract with Air Master, dated 12 January 1988 (the "Air Master Contract") for the purpose of purchasing windows for installation at the Apartment Building under the Tri-State Contract. The Air Master Contract is between only Air Master and Tri-State.

Shortly after Tri-State began installation of the windows at the Apartment Building, Northbridge terminated the Tri-State Contract. Northbridge was unhappy with Tri-State's installation of the windows.[3] Following the dismissal of Tri-State, Northbridge attempted to negotiate a separate agreement with Air Master so that Northbridge could purchase the windows directly from Air Master. *See* Defendant's Brief at 5. In the Nackson Letter, dated 19 July 1988, an attorney for Northbridge, Joseph Lewis Nackson ("Nackson"), wrote to Air Master and stated:

This letter serves to confirm our previous conversations.

You had advised me that Air Master would in fact credit my client [Northbridge] with the sum of $55,000. Said sum having previously been paid to Air Master by Tri-State.

---

**2.** Air Master withdrew the fifth count of its Complaint. *See* DeVito Certification at ¶ 10.

**3.** As a result of the inadequacies of the installation by Tri-State, Northbridge sued Tri-State in the Superior Court of New Jersey, Law Division, Bergen County and obtained a judgment against Tri-State in the amount of $118,590.47.

As you know, Tri–State could not properly install the windows [at Northbridge's] Co–Op. As a result of such difficulty, [Northbridge] will be hiring a separate window installer and intends to purchase those windows ordered by Tri–State from your company. We also wish to confirm a present unit price to Northbridge of $144.00.

Would you kindly sign a copy of this letter at the appropriate place indicating Air Master's affirmance of these terms.

Nackson Letter.

Although the Nackson Letter appears to indicate there was an agreement between Air Master and Northbridge for the purchase of windows by Northbridge, Air Master did not unequivocally approve of the terms in the Nackson Letter. In accepting the contents of the Nackson Letter, Daniel Monaco, Vice President of Air Master, indicated approval on behalf of Air Master but only based upon an additional condition to be performed by Northbridge—the presentation to Air Master of a Northbridge purchase order. Specifically, Monaco stated with regard to the confirmation of the terms of the Nackson Letter: *"This confirmation will be valid only* when Air Master receives a Purchase Order from Northbridge Park Co–Op for the windows." *See* Exhibit D to the Monaco Cert. (emphasis added).

Monaco, on behalf of Air Master, sent the Nackson Letter back to Nackson along with a cover letter requesting arrangements be made as soon as possible for the delivery of the windows to the Apartment Building. *See* Exhibit E to Monaco Cert.

During the negotiations over the purchase of the windows by Northbridge from Air Master, Northbridge hired the architectural firm of Hyun & Siri (the "Architects") to prepare specifications for the installation of the windows of Northbridge. The Architects reported that the windows installed by Tri–State and manufactured by Air Master were not the proper windows for the building.[4] After receiving the report, the

Board of Directors decided not to purchase the windows from Air Master.

Northbridge did not deliver, execute or even prepare a purchase order to Air Master, as required by Air Master's Vice President, Daniel Monaco. The parties had no further communication until the litigation was initiated.

## C. The Summary Judgment Standard

■■■ To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The district court's task is to determine whether disputed issues of fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (emphasis in original, citations and footnotes omitted).

---

**4.** Air Master vigorously contests this assertion; this issue is not pertinent to the issue of whether summary judgment is appropriate. For the purposes of these motions, it is assumed the position of Air Master is correct concerning the suitability of the windows.

The Supreme Court elaborated on the standard in *Anderson v. Liberty Lobby, Inc.:* "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The Supreme Court went on to note in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323–24, 106 S.Ct. at 2552–53 (footnote omitted). Thus, once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e).

In diversity actions, federal courts determine the substantive law to be applied by looking to the choice of law rules of the forum state. *Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Electronic Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Petrella v. Kashlan,* 826 F.2d 1340, 1343 (3d Cir.1987).

### D. The Nackson Letter

A contract is formed where the essential terms of an agreement have been communicated between the parties and there has been mutual assent to those terms. *Knight v. New England Mut. Life Ins. Co.,* 220 N.J.Super. 560, 565, 533 A.2d 55 (App.Div.1987), *certif. denied,* 110 N.J. 184, 540 A.2d 180 (1988); *St. Barnabus Med. Center v. Essex Co.,* 211 N.J.Super. 488, 495, 511 A.2d 1287 (L.Div.1986), *rev'd on other grounds,* 216 N.J.Super. 161, 523 A.2d 248 (App.Div.1987), *rev'd in part,* 111 N.J. 67, 543 A.2d 34 (1988).

Air Master contends the Nackson Letter by its very terms confirms the existence of the Air Master Contract. It is argued the letter is plain on its face and because it is written by an authorized representative of Northbridge serves to bind Northbridge. Air Master argues that when its vice president, Daniel Monaco, signed to approve the contents of the Nackson Letter, the additional language set forth following his confirmation [5] was not meant to do anything other than effectuate a technical, bookkeeping requirement of Air Master and was not meant to add an additional condition to the Air Master Contract. Specifically, Monaco contends that:

> The simple reason for adding the note to the [Nackson L]etter was that Air Master uses a purchase order bookkeeping system and the purchase order was simply required to comply with [its] bookkeeping system. In fact, in order to input an order into the bookkeeping system of [the Nackson] comptroller requires a purchase order. This is the only reason why [Monaco] requested a purchase order.

Monaco Cert. at ¶ 14. This argument misses the point.

Essentially what Air Master is arguing is that there is a contract and it is ambiguous; thus a court is precluded from considering its terms on a motion for summary judgment and the motion must be denied. In this regard, the terms of the asserted agreement between Air Master and Northbridge must be unambiguous for purposes of a summary judgment motion.

The construction of an unambiguous term in a contract is "exclusively within the court." *Gray v. Joseph J. Brunetti Constr. Co.,* 266 F.2d 809, 893 (3d Cir.), *cert. denied,* 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959). *Accord Ram Constr. Co. v. American States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984) ("When the question is one of 'construction' as distinguished from 'interpretation' of the contract, the issue is one of law."). Construction of a contract is defined as the process by which a contract is given a legal effect. *Ram Constr.,* 749 F.2d at 1053. As such, the construction of a

---

**5.** "This confirmation will be valid only when Air Master receives a purchase order from Northbridge Park Co–Op for the windows." *See* Monaco Cert., Exhibit D.

contract's terms are [sic] a question of law.

The question whether a term is clear or ambiguous is also a question of law. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 362 (3d Cir.1987); *Kroblin Refrigerated XPress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir.1986). Ambiguity exists if the terms of the contract are susceptible to two reasonably alternative interpretations. *Mellon Bank v. Aetna Business Credit*, 619 F.2d 1001, 1011 (3d Cir.1980). The interpretation of ambiguous terms in a contract is generally a question of fact. *Ram Constr.*, 749 F.2d at 1052.

*Nevets C.M., Inc. v. Nissho Iwai American Corp.*, 726 F.Supp. 525, 531 (D.N.J.1989), aff'd mem., 899 F.2d 1218 (3d Cir.1990). With regard to the construction of a contract,

[a] general policy of contract law requires that the contract be construed as a whole whenever possible. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1131 (3d Cir.1969); *Bell v. Purolator Products, Inc.*, 1989 WL 99024, 1989 U.S.Dist. LEXIS 9822, *14 (E.D.Pa. Aug. 16, 1989); *Wheatly v. Sook Suh*, 217 N.J.Super. 233, 239, 525 A.2d 340 (App. Div.1987).

*Id.*, 726 F.Supp. at 532–33. Most importantly, "[i]t is not necessarily the parties' true intent, but the intent as expressed or apparent in the writing, that controls." *J.I. Hass Co., Inc. v. Gilbane Building Co.*, 881 F.2d 89, 92 (3d Cir.1989).

"[A] contract must be sufficiently definite in its terms to ascertain with reasonable certainty the performance to be rendered by each of the parties. *Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 531, 126 A.2d 646 (1956). The words used in a contract must be given their 'plain and ordinary meaning.'" *Nevets*, 726 F.Supp. at 533 (quoting *Independent Oil Workers at Paulsboro, N.J. v. Mobil Oil Corp.*, 441 F.2d 651, 653 (3d Cir.1971)).

Air Master argues the additional term provided by its vice president, Daniel Monaco, is ambiguous and thus precludes the entry of summary judgment. "To be un-ambiguous, an agreement must be reasonably capable of only one construction." *Washington Hosp. v. White*, 889 F.2d 1294, 1301 (3d Cir.1989). The additional language provided by Monaco is susceptible of only one meaning: the confirmation by Air Master is valid only when Air Master received a purchase order from Northbridge. No other construction or interpretation is reasonable.

In construing the terms of a contract, a court may not rewrite a contract to favor either party. *Vanguard Telecomm. v. Southern New England Tel.*, 900 F.2d 645, 651 (3d Cir.1990); *Armco, Inc. v. Glenfed Financial Corp.*, 720 F.Supp. 1129, 1138 (D.N.J.1989). In New Jersey, contract construction is directed at discovering the object of intent of the parties manifested in the terms of the agreement, not the undisclosed, subjective intent of one party or another. *Dome Petro. Ltd. v. Employers Mut. Liability Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985).

By providing the additional requirement of a purchase order, Air Master manifested its outward intent to bind itself to the Nackson Letter only upon receipt of a purchase order from Northbridge. This outward manifestation "cannot be undone, in the absence of fraud, mistake, duress or some other contract defense." *Nevets*, 726 F.Supp. at 534. *See also Zapanta v. Isoldi*, 212 N.J.Super. 678, 687 (1986) ("Motivations or mental reservations cannot affect a written agreement. If they were permitted to do so, a written agreement would be worthless and the source of much litigation."); *see also Dome Petro. Ltd. v. Employers Mut. Liability Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985) (interpretation of contract depends not on "discovery of undisclosed subjective intent," but on manifestation of intent in language of contract and surrounding circumstances); *Mellon Bank v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir.1980) (parties bound by terms of their contract absent illegality, unconscionableness, fraud, duress or mistake); J. Calamari & J. Perillo, *Contracts* § 2–2 (3d ed. 1987) (discussion on "objective theory of contracts"). Succinctly stat-

ed, a change of mind does not bear upon the validity or existence of the contract. In this circumstance, the terms of the "contract at issue" indicate although there were attempts to form a contract and it appears from the Nackson Letter many of the essential terms of the contract were agreed upon, the acceptance of Air Master would only be valid (pursuant to its own requirement) upon Air Master's receipt, and only upon Air Master's receipt, of a purchase order from Northbridge.

■■■■ The instant transaction is also governed by the Uniform Commercial Code ("UCC") in that it is a transaction for the sale of goods. *See* N.J.S.A. § 12A:2–102 (West 1962). "A sale consists [of] the passing of title from the seller to the buyer for a price." *Id.* § 2–106(1). Goods are defined in section 2–105 to mean: "[A]ll things (*including specially manufactured goods*) which are movable at the time of identification to the contract for sale ..." *Id.* § 2–105(1) (emphasis added).

Section 2–207 of the UCC covers Additional Terms in Acceptance or Confirmation and provides, in part:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is *expressly made conditional* on assent to the additional or different terms.

*Id.* (emphasis added).

In the instant matter, both parties agree that certain negotiations occurred prior to the Nackson Letter. Air Master asserts that an agreement was reached prior to its receipt of the Nackson Letter. *See* Plaintiff's Brief at 7. Northbridge contends that such an agreement was merely attempted and thus no agreement existed prior to the drafting of the Nackson Letter. *See* Northbridge Brief at 5–6. The operative document is the Nackson Letter.

A number of jurisdictions have had an opportunity to address section 2–207 as it applies to situations similar to the instant case. Generally, the courts have required

that the § 2–207(1) proviso (the "Proviso") be strictly construed. *Reaction Molding Technologies, Inc. v. General Electric Co.,* 588 F.Supp. 1280 (E.D.Pa.1984).

In *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir.1972), which has been followed almost uniformly, the court held that in order to fall within the Proviso, "it is not enough that an acceptance is expressly conditioned on additional or different terms; rather, an acceptance must be expressly conditional on the offeror's assent to those terms." *Id.* at 1168. The court concluded that the Proviso would convert an acceptance into a counter-offer only where the offeree clearly reveals its unwillingness to proceed with the transaction unless it is assured of the offeror's assent to the additional terms, in this case the delivery of the purchase order. *Reaction Molding,* 588 F.Supp. at 1288 (citing *Dorton,* 453 F.2d 1161). *See also Luria Brothers & Co. v. Pielet Brothers Scrap Iron & Metal, Inc.,* 600 F.2d 103 (7th Cir.1979). It is beyond any doubt or issue that Air Master indicated its confirmation would "be valid *only* when Air Master receive[d] a Purchase Order from Northbridge ... for the windows." *See* Exhibit D to the Monaco Cert. (emphasis added).

The court in *Reaction Molding* cited Hawkland's U.C.C. Series which states that in order to fit within the Proviso the qualifying language "must be stated in such a place, manner and language that the offeror will understand in the commercial setting of the transaction that no acceptance has occurred." 2 W. Hawkland, U.C.C. Series ("Hawkland") § 2–207:02 at 103. This is precisely what occurred. The Air Master confirmation was valid only when an additional condition was fulfilled—the delivery of the purchase order by Northbridge to Air Master. This did not happen.

[T]he response of the offeree operates as an acceptance if a reasonable man in the position of the offeror would assume that an agreement had been made despite differences in the exchanged forms. In this connection, reasonable belief that the contract has been made must take into account the words that were used by

the offeree, where they appeared in his form, whether they were printed, typed or handwritten, along with the total commercial setting of the transaction, including course of dealing and usage of trade. *Hawkland* at 103–104. A reasonable person reading the Nackson Letter and Monaco's response to the letter would understand and assume the existence of a contract *"only* when Air Master receive[d] a Purchase Order from Northbridge...." Exhibit D to Monaco Cert. (emphasis added). The language could not be more clear.

In the present case, there is little doubt that the acceptance is expressly conditioned upon Air Master's receipt of a purchase order. Air Master added the clause. This clause makes it clear the confirmation is not valid unless there was compliance with this term. The clause was typed and signed by Air Master's Vice President, Daniel Monaco, and then returned to Northbridge. In construing the terms of the qualified acceptance by Monaco on behalf of Air Master, it is clear the Air Master acceptance of the Northbridge offer was conditional and never became effective. Because of the qualified confirmation of Air Master, there is no contract to construe or enforce in this case.

### E. Intended Beneficiary

■ Air Master asserts that Northbridge's motion for summary judgment should be denied because there exists genuine issues of material fact as to whether Air Master was an intended beneficiary of the Tri–State Contract. Air Master argues its product was integral to the fulfillment of the Tri–State Contract and therefore Air Master was an intended beneficiary of said Contract. Air Master places particular emphasis on the fact that its windows were specifically mentioned in the Tri–State Contract.

The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance. *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J.Super. 370, 373, 297 A.2d 203, 204 (Law Div.1972).

Thus, the question becomes whether the Tri–State Contract which referenced the installation of Air Master windows was intended for the benefit of Air Master. New Jersey courts have been hesitant to imply a third party beneficiary obligation unless the parties explicitly indicate that (1) the claimant is an intended beneficiary of the proposed arrangement and (2) that the claimant will have a direct claim under the contract. *Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503 (3d Cir.1981).

In *Dravo*, a contractor entered into an agreement with a subcontractor for the installation of various equipment including Dravo systems. The subcontract provided that only Dravo ventilating systems be used. The court found that the mention of Dravo's ventilation units was merely incidental and thus Dravo was not an intended beneficiary of the contract between the contractor and subcontractor. *Id.* See also *Houdaille Construction Materials Inc. v. American Telephone and Telegraph, Inc.*, 166 N.J.Super. 172, 399 A.2d 324 (1979) (where plaintiff was not beneficiary of contract except in most incidental effect he gained no right of enforcement).

The Tri–State Contract does not indicate in any way that Air Master was to be a beneficiary of the proposed arrangement nor does it state that Air Master will have any claim under the contract. The only reference made to Air Master in the Contract is in the second paragraph which states in relevant part: "Said windows shall be Air Master's White Aluminum A2.5 Replacement Tilt Window Model 302 with custom made exterior panning and interior aluminum snap trim." *See* Tri–State Contract at ¶ 2.

Any question as to whether Air Master was an intended third party beneficiary of the Tri–State Contract is clarified by the subsequent conduct of Air Master. *Joseph*

*Hilton & Associates, Inc. v. Evans*, 201 N.J.Super. 156, 171 (App.Div.1985) ("[T]he conduct of the parties after execution of the [Tri–State C]ontract is entitled to great weight in determining its meaning.") The conduct of Air Master in negotiating with Northbridge directly is also a clear indication Air Master did not consider itself an intended third party beneficiary and sought to establish a contractual arrangement directly with Northbridge. *See Michaels v. Brookchester, Inc.*, 26 N.J. 379, 388, 140 A.2d 199 (1958) ("Where ambiguity exists, the subsequent conduct of the parties in the performance of the agreement may serve to reveal their original understanding.")

There is no genuine issue of material fact with respect to Air Master's status as an intended beneficiary. Northbridge's motion for summary judgment may not be defeated on that ground.

### F. Equitable Estoppel

■ In Plaintiff's Brief, Air Master argues the following:

> A review of the facts in this case clearly indicates that the necessary requirements of the doctrine have been met and Air Master is entitled to this equitable remedy. There is no dispute that Air Master manufactured over 2400 custom made windows for Northbridge's premises in reliance on Northbridge's representations, and that Air Master's reliance on such representations was eminently reasonable. First, Air Master did not contract with Tri–State until after Air Master and Northbridge had a formal meeting regarding Defendant's window requirements and specifications. At that meeting, Northbridge expressly approved of the windows. See *Certification of Daniel Monaco*.
>
> It was not until *after* Tri–State and Northbridge entered into a contract whereby Northbridge and Tri–State were bound to use Air Master's windows, and Northbridge indicated its window requirements and Northbridge expressly approved of Air Master's windows, that Air Master manufactured the windows.

> Northbridge knew that Air Master would act on the basis of these representations. Air Master certainly would not have manufactured these windows suitable for Northbridge's premises alone, if Northbridge had not unequivocally and repeatedly represented that they intended to use Air Master's windows.
>
> Northbridge's actions and representations to Air Master after Air Master manufactured the windows, while not despositive [sic] of the issue, simply reinforces Air Master's position that Northbridge intended to purchase Air Master's windows.

Air Master Brief at 21–22 (emphasis in original).

A few initial observations with regard to the above-quoted passage are necessary at this point. It is first observed that there is nothing in the record to establish that "Air Master manufactured over 2400 *custom made* windows ... suitable for the [Apartment Building] alone." *Id.* (emphasis added). There is nothing in the record which indicates the manufacture of these windows was made "in reliance on Northbridge's representations." *Id.* In point of fact, the manufacturing was undertaken pursuant to the Air Master Contract, that is, the contract between Air Master and Tri–State.

As previously mentioned, by its conduct, Air Master acknowledged it had neither a direct nor indirect contractual arrangement with Northbridge. This is obvious from the Air Master attempts to negotiate such a contractual arrangement with Northbridge. The arguments in Plaintiff's Brief quoted above attempt to skirt the equitable estoppel issue and mix the Tri–State Contract, the Air Master Contract and the negotiations to establish a contract between Air Master and Northbridge, as set forth in the Nackson Letter.

When each of the Tri–State Contract, the Air Master Contract and the Nackson Letter are set aside and looked at individually, it is clear the contentions with regard to equitable estoppel are unfounded. There is nothing in this case to suggest Air Master relied on anything other than the Tri–State

Contract. There is nothing to suggest Northbridge made any misrepresentations or concealed any material facts done with the intention or expectation that Air Master would rely upon such misrepresentations or concealment of material facts to its detriment. There were clearly a series of contracts contemplated by the parties. First, Northbridge contracted with Tri–State to have Tri–State provide and install almost 2500 windows in the Apartment Building. Thereafter, Tri–State contracted with Air Master to purchase the windows for later sale to Northbridge and installation at the Apartment Building.

After Northbridge terminated Tri–State, Air Master and Northbridge attempted to arrive at a contractual agreement. At this point, it is clear the windows at issue had been previously manufactured and were in existence. As stated by counsel for Air Master, "the specific purpose of Mr. Nackson's contact with Air Master was to work out a *possible arrangement to buy windows* which Northbridge knew were *already in existence.*" DeVito Supplemental Cert. at ¶ 8 (emphasis added). Clearly, Air Master did not change its position in connection with any conversations it had with representatives of Northbridge concerning the manufacture of the windows at issue. Moreover, there is nothing to suggest these windows were special or custom designed.

The Certification of Daniel Monaco, although indicating "the windows [were] specially manufactured by Air Master for installation at the [Apartment Building]," (Monaco Cert. at ¶ 4) does not indicate that the windows were custom designed or manufactured or were anything other than standard windows. In any event, drawing all favorable inferences from the submissions of Air Master, the manufacture of the windows at issue was a result of the Tri–State Contract, that is the contract between Air Master and Tri–State, not the result of any later negotiations designed to arrive at "a possible arrangement to buy the windows which Northbridge knew were already in existence." DeVito Supplemental Cert. at ¶ 8.

In *Foley Machinery Co. v. Amland Contractors, Inc.*, 209 N.J.Super. 70, 75, 506 A.2d 1263 (App.Div.1986), the court stated:

> Equitable estoppel requires proof of "a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse."

*Id.* (quoting *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 339, 403 A.2d 880, 884 (1979)).

The burden of proof in an equitable estoppel claim falls upon the party asserting the estoppel. *Id.* 209 N.J.Super. at 76, 506 A.2d 1263. In the instant matter, there is no indication that Northbridge committed any improprieties in its dealings with Air Master. There were no explicit representations in the Tri–State Contract which bestowed upon Air Master the status of a beneficiary or which stated that Air Master would have a claim under the Tri–State Contract. "A party cannot enforce provisions of a contract to which he is not a privy, unless it is clear that the parties to the contract intended to confirm upon him the right to enforce it." *First National State Bank v. Carlyle House Inc.*, 102 N.J.Super. 300, 322, 246 A.2d 22 (Ch.Div. 1968).

In short, "[e]stoppel is only appropriate where one having a right to do so justifiably relies on another's conduct to his detriment." *New Jersey Bank v. Palladino*, 146 N.J.Super. 6, 13, 368 A.2d 943 (App. Div.1976). Simply put, Air Master was not misled and cannot argue it relied on any conduct of Northbridge in the manufacture of the windows. The windows were manufactured pursuant to the Tri–State Contract.

*Conclusion*

For the foregoing reasons, Northbridge's motion for summary judgment is granted. Air Master's cross-motion for summary

judgment is denied. An appropriate order accompanies this opinion.